FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 23, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL DEAN JAMES,

Plaintiff,

v.

RONALD HAYNES, VANESSA JAMES, and CLAUDELL WHITMAN,

Defendants.

No.   2:26-cv-126-EFS

**ORDER DISMISSING FIRST AMENDED COMPLAINT**

Before the Court is Plaintiff Michael Dean James' First Amended Complaint.[1] Plaintiff, an individual currently incarcerated at the Stafford Creek Corrections Center (SCCC), is proceeding *pro se* and *in*

---

[1] ECF No. 9.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 1

*forma pauperis*[2]. Defendants have not been served. He seeks financial compensation of $9,500,750.00, punitive damages of $3,750,000.00, and an "investigation for the recovery of eagle feathers."[3]

As a general rule, an amended complaint supersedes the original complaint and renders it without legal effect.[4] Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."[5] Furthermore, defendants not named in an amended complaint are no longer defendants in the action.[6] Accordingly, Defendants Zilvinas Jakstas, Department Of Corrections, Airway Heights Correction Center and Kay Heinrich were terminated from this action. C/O "John Doe" Shanks was added as a Defendant.[7]

---

[2] ECF No. 7.

[3] ECF No. 9 at 57.

[4] *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).

[5] *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted).

[6] *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

[7] ECF No. 9 at 1, 13.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 2

Liberally construing the First Amended Complaint in the light most favorable to Plaintiff, however, the Court finds that it fails to cure the deficiencies of the original Complaint and does not state a claim upon which relief may be granted.

**PLAINTIFF'S ALLEGATIONS**

*Count I:*

Plaintiff accuses Defendants Ronald Haynes, Superintendent of the Airway Heights Corrections Center,[8] and Religious Coordinator Claudell "Tommy" Whitman,[9] of violating his due process rights under the Fourteenth Amendment.[10]

Plaintiff contends that on March 17, 2025, Defendant Haynes failed "to give [Plaintiff] an avenue of appealing his rejection of [Plaintiff's] wedding ring."[11] Plaintiff argues that the ring was purchased through an approved vendor and sent to him by his wife, but

---

[8] *Id.* at 3,

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.*

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 3

he was not "afforded the right to appeal his denial through Rejected Mail DOC 05525 or Restricted Incoming/Outgoing property DOC 21-139."[12] Plaintiff indicates that he pursued a "Resolution Request," but does not state the outcome of that grievance.[13]

Plaintiff states that on December 30, 2024, Defendant Chaplain Whitman received a package, and summoned Plaintiff to distribute "religious property" on January 17, 2025, but did not distribute the wedding ring to Plaintiff.[14] Plaintiff claims that it is his property.[15] He states that after he presented his marriage certificate Defendant Chaplain Whitman stated the distribution of the ring would be rescheduled and began an investigation into the validity of Plaintiff's marriage.[16]

Plaintiff states that after two months, on March 17, 2025,

---

[12] *Id.* at 4 and 6.

[13] *Id.* at 6.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 16

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 4

Defendant Chaplain Whitman informed Plaintiff the wedding ring would not be distributed because Plaintiff had not followed DOC policy 590.200 concerning his marriage.[17] Plaintiff states that Defendant Chaplain Whitman insisted there was nothing to appeal.[18] Nevertheless, Plaintiff pursued various avenues of appeal and eventually filed a Resolution Request.[19] He does not state the outcome of this grievance.

Plaintiff concedes that he was married in violation of DOC policy 590.200 (Marriages and State Registered Domestic Partnerships), and the ring was not authorized in accordance with that policy.[20] He presents no facts indicating he properly sought permission to marry. Based on the allegations in the initial complaint, Plaintiff's wife "picked up" the ring from the facility on or about March 19, 2025.[21]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 6.

[21] ECF No. 1 at 10.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 5

Plaintiff misapprehends the requirements of due process. To establish a due process claim, a plaintiff must show that he possessed a protected property interest and that he was deprived of that interest by arbitrary government action.[22] Plaintiff's conclusory assertions that the ring was his property and Defendants acted arbitrarily are not sufficient.[23]  Plaintiff provides no facts supporting a property interest in an unauthorized item, which was returned to the purchaser.

The Court cannot conceive that Plaintiff had a protected property interest in a wedding ring sent from his wife and returned to her, upon a determination that his marriage violated DOC policy, which he does not contest. Therefore, he failed to state a Fourteenth Amendment due process claim against Defendants Haynes or Whitman upon which relief may be granted.

---

[22] *See Ward v. Ryan,* 623 F.3d 807, 813 (9th Cir. 2010).

[23] ECF No. 9 at 6 and 7; *see also Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 6

In so finding, the Court recognizes that a prisoner has a fundamental right to marry.[24] This right, however, "is subject to substantial restrictions as a result of incarceration,"[25] and notably Plaintiff did not challenge the constitutionality of DOC policy 590.200.

As an overview, a prison regulation that impinges on a prisoner's right to marry is permitted so long as it is "reasonably related to legitimate penological interests."[26] Courts consider four factors when determining the reasonableness of a policy: (1) whether there is a logical, valid connection between the regulation and the penological goal(s) sought to be advanced by that regulation—a connection that is not so remote as to render the policy arbitrary or irrational; (2) whether there are alternate means by which the inmate might exercise

---

[24] *See Turner v. Safley*, 482 U.S. 78, 94–96 (1987), *see also Obergefell v. Hodges*, 576 U.S. 644, 664 (2015) (recognizing that "[o]ver time and in other contexts, the Court has reiterated that the right to marry is fundamental under the Due Process Clause").

[25] *Turner*, 482 U.S. at 95.

[26] *Id.* at 89.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 7

the asserted constitutional right—means that remain open to him despite his incarceration; (3) whether the accommodation requested by the inmate so that he might exercise the asserted constitutional right would have an adverse effect on guards, other inmates, and/or the allocation of prison resources; and, finally, (4) whether there are any obvious, easy alternate means by which the prison might accommodate the inmate's exercise of the asserted right.[27] Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."[28]

Decisions of prisoner administrators to prohibit marriage between a prisoner and a former prison employee are reasonably related to the goal of ensuring secure prisons where staff and inmates respect rules. Those who demonstrate a willingness and ability to break institutional rules pose a threat to institutional security. It is a

---

[27] *See id.* at 89–92.

[28] *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 8

legitimate correctional goal to ensure an institution's rules are obeyed and its security is not breached.[29]

Further, a PREA investigation into Plaintiff's relationship with his wife substantiated a PREA violation, resulting in Plaintiff being considered a PREA victim.[30] That Plaintiff was a PREA victim is a reasonable ground to find their marriage poses a threat to the security of the facility and threatens other legitimate penological interests. As Plaintiff points out, the former Corrections employee spouse is not an approved visitor.[31]

Allowing Plaintiff to receive a wedding ring, a symbol of marriage, from a former prison employee would reward unauthorized, deceptive behavior. It serves a legitimate penological goal not to allow a wedding ring to one who has violated the DOC policy on marriage.

---

[29] *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (ensuring safety is the dominant consideration in the context of prison management).

[30] ECF No. 9 at 43–46.

[31] *Id.* at 5 and 7.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 9

The action of not distributing the wedding ring and returning it to the wife is, therefore, reasonable.

In any event, the issue in *Turner v. Safley* was the constitutionality of a prison regulation. That is not the case here. Although granted the opportunity to do so, Plaintiff did not challenge the constitutionality of DOC policy 590.200, and he provides no Resolution Request (i.e., prison grievance) indicating that he challenged that policy[32].

*Count II:*

Plaintiff accuses Defendants Haynes, Whitman, and Vanessa James, an Assistant Attorney General,[33] of deliberate indifference in violation of the Eighth Amendment.[34]

---

[32] *See* ECF No. 9 at 20–21 (Exhibit 1), 26–27 (Exhibit 6), 32–33 (Exhibit 9), 35 (Exhibit 12), 42 (Exhibit 15A), 43 (Exhibit 15B), 44 (Exhibit 15C), 45 (Exhibit 15D), 46–47 (Exhibit 15E), 48 (Exhibit 15G), 50 (Exhibit 18A), 51 (Exhibit 18B), 52 (Exhibit 19A), 53 (Exhibit 19B).

[33] *Id* at 3.

[34] *Id.* at 5 (referring to "Page 6 of 9").

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 10

Plaintiff states that Defendant Chaplain Whitman provided Plaintiff's wife with information on how to send the wedding ring prior to its purchase.[35] Plaintiff does not state that his wife was candid about the circumstances of their marriage or that Defendant Whitman was aware, prior to the purchase, that Plaintiff had violated DOC policy 590.200.

Plaintiff states that Chaplain Whitman unofficially denied the wedding ring on March 17, 2025, and left the ring at the "front desk of AHCC" for Plaintiff's wife to pick up on March 20, 2025.[36] He states that on March 20, 2025, he placed a "Religious Bead Order Request" from his wife which Defendant Chaplain Whitman approved on March 28, 2025, and then approved the bead order for pickup.[37]

Plaintiff complains that Defendant Chaplain Whitman approved the bead order "knowing that Religious Bead Orders are to be from

---

[35] *Id.* at 5.

[36] *Id.*

[37] *Id.*

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 11

family members that are on one's visitor's list."[38] Plaintiff asserts that his bead order did not comply with policy but was approved, while his wedding ring had to be picked up by his wife.[39]  Plaintiff contends, "The failure to allow me the rights to appeal my ring being denied because policy was not followed should be applied to my Religious Bead Order Request, and yet despite the bead order not adhering to policy, Chaplin [sic] Whitman approves and distributes the bead order."[40]

Plaintiff argues, "they used my wifes [sic] former employment as an arbitrary arguement [sic] to deny my marital symbol."[41] Plaintiff asserts that Defendant Whitman contacted Assistant Attorney General Venessa James on February 10, 2025, for legal advice concerning the distribution of his wedding ring, and was informed that "since policy was not followed I/I's are not allowed to receive the benefits or

---

[38] *Id.* at 5.

[39] *Id.* at 5 (referring to "Page 6 of 9" and "Page 5 of 9").

[40] *Id.* at 5 and 7.

[41] *Id.* at 7.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 12

privileges from DOC."[42]  Plaintiff accuses Defendant James of "not properly looking into the incident" which allegedly deprived Plaintiff of "due process and [his] right to appeal their reason of denial."[43] Once again, Plaintiff does not state that he is challenging the constitutionality of the policy.

Rather, he asserts that because he is married, he should have been issued a Major Infraction for entering into an unauthorized marriage under DOC policy 590.200, but he was not.[44] Plaintiff asserts, "after they are served the infraction, they distribute the ring as well."[45] Plaintiff presents no factual allegations in support of this conclusory assertion that other prisoners who have entered into unauthorized marriages have been allowed to have a wedding ring. Plaintiff states

---

[42] *Id.* at 7, 18.

[43] *Id.* at 18.

[44] *Id.*

[45] *Id.*

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 13

that his wife received "heavily redacted" emails in response to a public records request, with a response, "preparing for litigation."[46]

To establish an Eighth Amendment violation in a conditions of confinement case, a prisoner must show that the prison official acted with deliberate indifference to the plaintiff's health or safety.[47] Deliberate indifference exists when the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."[48]

The Court cannot infer from these allegations against Defendant James, Whitman, and Haynes that they violated Plaintiff's Eighth Amendment rights.  As noted above, anti-fraternization rules reasonably serve legitimate correctional interests in maintaining safety and security. Allowing unfettered fraternization between corrections staff and inmates would increase the risk that contraband could be introduced into the facility, and compromise the respect and authority of corrections staff by giving inmates a reason to question their

---

[46] *Id.*

[47] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[48] *Id.* at 842.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 14

impartiality and thus undermine employee effectiveness.[49] Anti-fraternization rules promote internal security, a legitimate penological goal.

It is unclear how denying a marital symbol when a prisoner marries in violation of established policy constitutes an arbitrary action. Indeed, it would be unreasonable to reward a prisoner with a marital symbol, after he has violated a policy on marriage.

There is a difference between a religious bead order and a wedding ring, both as to value and symbolism. Even assuming Plaintiff's assertions are correct, the inconsistent application of a policy to a bead order does not rise to the level of a constitutional violation

---

[49] *See e.g. Wolford v. Angelone,* 38 F. Supp. 2d 452, 454, 1999 WL 92957 (W.D. Va. 1999) (finding anti-fraternization policy was a valid regulation of prison administration and consequently provided only an indirect restriction on marriage, which did not violate the fundamental right to marry under the Fourteenth Amendment or a First Amendment right to association); *see also Turner v. Safley,* 482 U.S. 78.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 15

under § 1983.[50] Further, the provision of legal advice does not rise to the level of a constitutional violation. Plaintiff has failed to state an Eighth Amendment claim against Defendants Haynes, Whitman, or James.

*Count III:*

Plaintiff asserts an "Eighth Amendment Retaliation" claim against newly added Defendant Corrections Officer "John Doe" Shanks.[51] He asserts that on November 18, 2024, he received information that an "active PREA allegation" had been brought against him.[52] He states the following day, a non-party correctional industries staff member asked about his marriage.[53]

---

[50] *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (alleged failure to follow prison policy does not establish federal constitutional violation).

[51] *Id.* at 7.

[52] *Id.*

[53] *Id.*

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 16

Plaintiff contends that on November 27, 2024, Defendant C/O "John Doe" Shanks, who worked in the kitchen with the non-party correctional industries staff member, issued Plaintiff an "out of bounds" infraction, that was later dismissed.[54] Plaintiff states that he "began to file a Resolution Request on 12/23/24 for PREA Retaliation," but it was "pushed out for rewrites and then dismissed for being past the time to file."[55]

Plaintiff states that Defendant Shanks was "stationed to work" in the chapel on January 18, 2025, when Plaintiff met with the Chaplain, believing he would receive his wedding ring.[56] Plaintiff alleges that Chaplain Whitman and Defendant Shanks had a three-to-five-minute closed door conversation, after which Chaplain Whitman questioned the validity of Plaintiff's marriage.[57] Plaintiff asserts that this "retaliation had caused the deprivation of my wedding ring and had

---

[54] *Id.* at 7–8.

[55] *Id.* at 8.

[56] *Id.*

[57] *Id.*

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 17

given me anxiety and stress that had led to weightloss and being placed onto a high dosage of anti-anxiety medication."[58]

The Court cannot infer from Plaintiff's speculative allegations that Defendant Shanks violated either Plaintiff's Eighth Amendment rights or his First Amendment right against retaliation.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement.[59] While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.[60] Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.[61]

---

[58] *Id.* (as written in original).

[59] *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (*citing Farmer*, 511 U.S. at 847 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[60] *Morgan*, 465 F.3d at 1045.

[61] *See Farmer*, 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d at 1089.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 18

Plaintiff's allegations that Defendant Shanks worked in the kitchen with another employee who had questioned Plaintiff about his marriage; infracted Plaintiff for being "out of bounds" at the gym eight days later, but the infraction was dismissed; and worked at the chapel nearly two months later and had a closed door conversation with the Chaplain for several minutes, after which the validity of Plaintiff's marriage was questioned, resulting in Plaintiff not being allowed to have a wedding ring, do not support an inference that Defendant Shanks violated Plaintiff's rights under the Eighth Amendment.

These allegations also fail to state a viable claim of First Amendment retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[62]

---

[62] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 19

Plaintiff presents no facts from which the Court could infer that Defendant Shanks' actions were motivated by retaliation for Plaintiff's engagement in protected conduct. The allegedly false infraction occurred in November 2024, before Plaintiff began attempting to file a grievance for alleged "PREA Retaliation" in late December 2024.[63]

Plaintiff presents no facts showing Defendant Shanks knew Plaintiff had engaged in protected grievance activities in December 2024 or how an unknown conversation that allegedly sparked questions about the validity of Plaintiff's marriage and resulted in Plaintiff not being allowed to have a wedding ring, chilled Plaintiff's exercise of his First Amendment activities, or did not have a legitimate correctional purpose.

Plaintiff admits the ring was not distributed because he violated DOC Policy by entering into an unauthorized marriage.[64] This action was not taken because Plaintiff filed a grievance. Consequently,

---

[63] ECF No. 9 at 8.

[64] *Id.* at 18.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 20

Plaintiff has failed to state a viable claim of retaliation against Defendant Shanks.

***Count IV:***

In a newly added claim, Plaintiff accuses Defendant Chaplain Whitman of violating his First Amendment and statutory religious rights.[65] Plaintiff states that in September 2024 Defendant Chaplain Whitman "distributed 8 Golden Eagle wing Feather along with 2 Golden Eagle tail Feathers."[66]

Plaintiff indicates that he was moved to the Intensive Management Unit (IMU) for unspecified reasons in July 2025.[67] He states, "upon placement, custody staff had removed my medicine bag from my persons and had it sent to Chaplin Whitman."[68] He claims that following his transfer to the Stafford Creek Corrections Center on October 27, 2025, his religious property was distributed to him in

---

[65] *Id.* at 14.

[66] *Id.* (as written in original).

[67] *Id.*

[68] *Id.* (as written in original).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 21

December 2025.[69] Plaintiff complains that he found only "one wing Feather and one tail feather in the box."[70]

He states that the Chaplain at the new facility "initiated an inventory" and found two medicine bags, "one from IMU at AHCC being placed inside a plastic bag inside the box, the other one had been wrapped inside a brown bandana."[71] Plaintiff asserts that he filed a Resolution Request against AHCC, which was denied as untimely.[72]

Plaintiff contends that the Chaplain "has the responsibility to ensure all of one's religious items are accounted for before transfer" and he blames Chaplain Whitman for the missing feathers, claiming Chaplain Whitman "infringed upon my First Amendment through retaliation by neglecting to properly care for my religious items before transferring to another institution.[73] He states that he filed a state tort

[69] *Id.*

[70] *Id.*

[71] *Id.* (as written in original).

[72] *Id.* at 14–15.

[73] *Id.* at 15.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 22

claim that was found to be unsubstantiated.[74]

While it is most unfortunate that Plaintiff's religious items have been lost, Plaintiff presents no facts from which the Court could plausibly infer that Defendant Chaplain Whitman personally participated in the deprivation. Further, Plaintiff did not identify his religion or state how the absence of the eagle feathers substantially burdened the practice of that religion.[75]

To establish liability pursuant to § 1983, Plaintiff must set forth facts demonstrating how each Defendant caused or personally participated in causing a deprivation of Plaintiff's protected rights.[76]

Plaintiff seems to assert a theory of supervisory liability against Defendant Chaplain Whitman. A supervising state official, however, may be liable under Section 1983 only if he or she "knew of the violation [ ] and failed to act to prevent [it]," or the official established a

---

[74] *Id.*

[75] *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).

[76] *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 23

custom or policy that led to the violation.[77] Plaintiff's sole allegation against Chaplain Whitman is that he or she "infringed upon my First Amendment through retaliation by neglecting to properly care for my religious items before transferring to another institution.[78] Negligence, however, is not actionable in an action pursuant to 42 U.S.C. § 1983.[79] Furthermore, bald assertions of retaliation do not state a claim upon which relief may be granted.[80]

---

[77] *Taylor*, 880 F.2d at 1045; *see also Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680 (9th Cir. 1984); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (recognizing that a supervisor can only be held liable for his or her own culpable action or inaction).

[78] ECF No. 9 at 15.

[79] *See Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986).

[80] *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."); *Hentz v. Ceniga*, 402 F. App'x. 214, 215 (9th Cir. 2010) (recognizing that conclusory allegations of retaliation are insufficient to state a claim).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 24

Plaintiff makes no allegation that Defendant Whitman had sole possession of his religious property. He provides no information regarding the location of his sacred feathers prior to or during his move to the IMU. Plaintiff seems to concede that others took one of his medicine bags in July 2025 before giving it to Chaplain Whitman, but it appears that two medicine bags remained in a property room at the receiving facility for more than a month. The Court cannot plausibly infer from the conclusory and speculative allegations presented that Defendant Whitman deprived Plaintiff of his religious property.[81] Plaintiff failed to state a claim against Defendant Whitman upon which this Court may grant him relief.

## MULTIPLE CLAIMS/MULTIPLE DEFENDANTS

Federal Rule of Civil Procedure 18(a) states: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Yet, a different approach is taken to unrelated claims involving multiple parties:

---

[81] *Ivey*, 673 F.2d at 268.

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 25

. . . Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.[82]

Any claims involving different defendants that do not arise out of the same transaction or occurrence may not be joined in this action.

Therefore, if Plaintiff wished to name other Defendants involved in the deprivation of his sacred feathers, he would need to file a new and separate action.

---

[82] *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)); *see also* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . .").

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 26

## DISMISSAL

The Court cautioned Plaintiff that if he chose to amend and the Court found the First Amended Complaint was frivolous, malicious, or failed to state a claim, the amended complaint would be dismissed.[83] The Court finds that Plaintiff's allegations against the named Defendants are insufficient to state a plausible constitutional claim.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The First Amended Complaint, ECF No. 9, is **DISMISSED** for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2), but **without prejudice** to Plaintiff filing a separate action regarding the newly added claim regarding the deprivation of his sacred Eagle Feathers.

2.      Based on this Court's reading of *Washington v. Los Angeles County Sheriff's Department*, 833 F.3d 1048 (9th Cir. 2016), this dismissal will **NOT** count as a "strike" pursuant to 28 U.S.C. § 1915(g).

---

[83] *See* 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2).

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 27

3.      The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

4.      This case is **DISMISSED** and **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order, enter judgment, and provide copies to Plaintiff.

DATED this 23rd day of July 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

ORDER DISMISSING FIRST AMENDED COMPLAINT -- 28